IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LATOYA TYREE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:12-CV-37 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Latoya Johnson ("Johnson") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433; 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Johnson, acting *pro se*, filed a brief detailing her various medical conditions, which the court liberally construes as a general argument that the ALJ's decision is not supported by substantial evidence. Johnson does not point to any legal error committed by the ALJ or direct the court's attention to any specific facts the ALJ improperly failed to consider or wrongfully rejected. Rather, Johnson's submissions merely recite why she believes she is disabled. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the ALJ's

decision. As such, I **RECOMMEND DENYING** Johnson's motion for summary judgment, Dkt No. 13,[1] and **GRANTING** the Commissioner's motion for summary judgment. Dkt No. 14.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Johnson failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Johnson bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

---

[1] Johnson, proceeding *pro se*, did not file a formal motion for summary judgment, only a written brief. Her brief will be construed as a motion for summary judgment.

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Johnson was born on October 18, 1984, Administrative Record, hereinafter "R." 29, and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Johnson is insured through March 31, 2011; R. 16; therefore she must show that her disability began before the end of this insurance period, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). Johnson has a twelfth-grade education, but took special education classes for math and English because of a learning disability. R. 30, 160-61, 298. Johnson's past relevant work includes work as a custodian, customer service representative at a call center, day care worker at facilities for adults

and for infants, and office cleaner. R. 44. These positions ranged from unskilled to semi-skilled and from sedentary to heavy. R. 44.

Johnson reported that during the relevant period, she had the capacity to do her own grocery shopping, write poetry, take a shower, prepare her own meals, do her laundry, clean her room, wash dishes, drive a car to pick her mother up from work, attend church weekly, lift twenty pounds, walk a mile, and surf the internet. R. 167–73.

## Claim History

Johnson protectively filed for DIB and SSI benefits on August 20, 2009, R. 120, claiming that her disability began on November 1, 2004, due to "asthma, allergy, acid reflux, eczema, back injury, depression, and learning disability." R. 155. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 50, 66. On February 2, 2011, ALJ Marc Mates held a hearing to consider Johnson's disability claim. R. 27. An attorney, Joey Arnold, represented Johnson at the hearing, which included testimony from Dr. Gerald Wells, a vocational expert. R. 27, 103.

On March 24, 2011, the ALJ entered his decision denying Johnson's claims for DIB and SSI benefits. R. 23. The ALJ found that even though Johnson had worked during the time she alleged she was completely disabled, she did not engage in substantial gainful activity as defined under the Act after the alleged onset date. R. 16. The ALJ further found that Johnson's asthma and scoliosis were severe impairments, but neither rose to listing-level severity. R. 16-18. The ALJ found that while Johnson suffers from depression, this impairment is not "severe" under the Act. R. 17-18. Considering these impairments, the ALJ found that Johnson retained the RFC to perform medium work, "except the claimant must avoid concentrated exposure to temperature extremes, dusts, fumes, odors, gases, and poor ventilation." R. 19. The ALJ also found that the

record did not substantiate the other myriad ailments Johnson alleged. R. 21. While he determined that Johnson could not return to her past relevant work as a day care worker or teacher's aide, R. 21, the ALJ concluded that Johnson could work at jobs that exist in significant numbers in the national economy: at the medium level of exertion, namely, bus person, order filler, and amusement park worker, and at the light level, cafeteria attendant, office helper, and laundry folder. R. 22. Accordingly, the ALJ concluded that she was not disabled. R. 23. On June 28, 2012, the Appeals Council denied Johnson's request for review, R. 1-4, and this appeal followed.

## **Medical History**

Johnson alleges that she is afflicted with numerous ailments. When she first filed for benefits on August 20, 2009, she cited her disabling impairments as: "asthma, allergy, acid reflux, eczema, back injury, depression, and learning disability." R. 155. She now alleges that she suffers from continual acid reflux, indigestion, vomiting almost every time she eats, chest pain, knee pain, ankle pain, abdomen pain, neck pain, back pain, constant headaches, a rash that covers her legs and arms, chronic diarrhea, high blood pressure, rectal bleeding/hemorrhoids, depression, insomnia, paranoia, anxiety, an eating disorder, various phobias (enclosed spaces, animals, and eating chicken), asthma, allergies, and constant itching. Dkt No. 13 at 4-11.

These ailments fall into one of three categories: those that do not appear in the record, those that appear in the record but are temporary in nature, and those that both appear in the record and are not obviously temporary.

The first category consists of Johnson's alleged ankle pain, phobias, paranoia, and eating disorder. These ailments were raised for the first time in Johnson's brief with this court. Dkt. No. 13. While these may be legitimate health concerns for Johnson, they were not at issue before the

ALJ and are unsubstantiated by the present record. Thus, they will not be considered. See Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972) ("Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence."). See also 42 U.S.C. § 405(g).

Those ailments in the second category, which are listed in the record but appear to be temporary, are the following:

- **Chest pain**: Johnson sought medical attention for chest pain on a number of occasions. R. 485 (12-22-2006); 607 (11-12-2009); 697 (7-18-2010); 730 (11-16-2010); 776 (1-9-2011). Each time, the appropriate tests were conducted and doctors could find no apparent source for the pain, see R. 489, 702, 783, or the pain was attributed to a temporary cause. See R. 611 (cause of pain diagnosed as acid reflux), 730 (cause of pain diagnosed as costochondritis (inflammation of the rib cartilage).

- **Abdominal pain**: Johnson has at various times complained of abdominal pain, but the source of the pain has most often been described as temporary. See R. 545 (diagnosing Johnson with cholelithiasis/gallstones), 546 (same), 344 (noting that her gallbladder was recently removed), 453–68 (diagnosing abdominal pain connected with a motor vehicle accident), 759–72 (diagnosing acute bronchitis). But see R. 745 (diagnosing gastritis with hemorrhage), 510–22 (attribution illegible), 499–504 (diagnosis unclear), 736–37 (no diagnosis given).

- **Vomiting**: Johnson also complains that she vomits almost every time she eats. Dkt No. 13 at 4. The record evidence is replete with evidence of vomiting, but it is often associated with temporary causes. R. 759–72 (acute bronchitis

diagnosed), 655 (associated with motor vehicle accident), 349–60 (given gastrointestinal cocktail (consisting of Mylanta, Xylocaine Viscous, and Donnatal)). Some vomiting, however, is associated with other, more permanent ailments, which will be addressed in the third category below. See R. 607–20 (diagnosed with gastrointestinal reflux disease ("GERD")), 469–74 (vomiting associated with depression). The record fails to substantiate Johnson's contention that she vomits almost every time she eats.

- **Knee pain**: The only knee pain mentioned in the record resulted from Johnson severely twisting her knee at work; there is no indication that the pain lasted more than one or two weeks. R. 747-57.

- **Neck pain**: The instances of neck pain that appear in the record are in close correlation with two motor vehicle accidents in which Johnson was involved. See R. 663 (2007 motor vehicle accident), 578 (2009 motor vehicle accident; Johnson reported 70% improvement in pain over course of treatment), 723–25 (Johnson complained of neck pain on 5-26-2010 connected to 2009 accident and was diagnosed with a neck strain), 683–87 (neck appeared normal on 9-25-2010).

- **Rash**: Johnson complains of a rash "that has spread from [her] legs and arms to both of [her] hands." Dkt No. 13 at 5. The record mentions a rash on Johnson's right leg in August 2005, R. 329, but the only other mention of a rash noted its absence on September 25, 2010. R. 685 ("no rash").

- **Headache**: Although Johnson alleges that she suffers from constant headaches, Dkt No. 13 at 5, the record evidence is inconclusive as to the cause of these headaches. Johnson's headaches are variously associated with: sinusitis, R. 331,

344, 475–82, 572; upper respiratory infections, R. 417–26, 732–33; motor vehicle accidents, R. 600, 599, 596, 584; use of the prescription drug Advair, R. 648, 740–41; or an outdated glasses prescription. R. 648, 740–41, 738-39. Records documenting headaches associated with other ailments are inconsistent at best.

- **Rectal bleeding/hemorrhoids**: Johnson was first diagnosed with hemorrhoids on May 13, 2008. R. 390. On February 8, 2010, she again complained of rectal bleeding, was diagnosed with hemorrhoids, and given over-the-counter treatment. R. 650. The record also noted that she had not been following her treatment instructions. R. 650. Several months later, she again complained of hemorrhoids and was prescribed medicated wipes. R. 722–26. There is no indication that this issue could not be effectively handled with over-the-counter medication and consistent adherence to a treatment plan.

- **Diarrhea**: Johnson alleges that she suffers from chronic diarrhea and that this condition prevents her from working. Dkt No. 13 at 9. There are several instances of diarrhea in Johnson's medical records, but her diarrhea is always accompanied by temporary causes or other ailments separately discussed. See R. 523–39 (7-12-2006, diarrhea connected with gallstones), 330 (11-23-2006, diarrhea connected with upper respiratory infection, viral gastroenteritis), 607–20 (11-12-2009, diarrhea connected with GERD). See also R. 335 (5-3-2006, no treatment noted), 499–504 (9-14-2006, disposition unclear). The present record does not support allegations of chronic diarrhea.

- **Anxiety**: Johnson has undergone two mental health examinations. See R. 469–72, 621–24. In each, she reported feeling stressed or anxious but was primarily treated

for depression. R. 471, 623–24. Neither examiner diagnosed her with an anxiety disorder.

- **Allergies**: Johnson has complained of allergies at various points in the record, but there is no indication in the record her allergies are not seasonal. See R. 444–50, 362–69, 650 (calling her allergies seasonal).
- **Itch**: An itch is only mentioned once in the record, in reference to the rash on Johnson's leg. R. 331.

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Thus, these temporary impairments do not meet Johnson's burden of proving disability.

The third and last category consists of ailments that are both listed in the record and do not appear to be temporary.

- **Gastroesophageal reflux disease ("GERD")**: Johnson's GERD appears regularly in the record evidence. See R. 344 (12-8-2006, prescribed Nexium for GERD); 483–93 (12-22-2006, gastrointestinal cocktail given); 343 (2-1-2007, recent gallbladder removal, advised on how to avoid GERD); 407–16 (2-13-2008, Johnson complained of GERD, treatment unclear); 607–20 (11-12-2009, Johnson complained of chest pain and was diagnosed with GERD); 722–28 (5-26-2010, gastrointestinal cocktail given); 738–39 (9-28-2010, prescribed Nexium for GERD); 734–45 (10-19-2010, diagnosed with GERD, prescribed with Protonix for GERD).

- **High blood pressure**: Johnson claims that she suffers from high blood pressure and is currently taking medication for this condition. Dkt No. 13 at 12. Johnson did not indicate where the record supported her claim that she had been treated for high blood pressure, but the record does reference her receiving refills for high blood pressure medication, R. 789, so it is likely that the issue has been ongoing for some time.

- **Depression**: Johnson was first diagnosed with depression in 2006. R. 621. Her symptoms include crying spells about every two months and a decreased energy level. Johnson denied other symptoms. R. 621. Johnson does not receive regular inpatient or outpatient treatment for depression or any other psychopathological disorder. R. 621. See also R. 469–72.

- **Insomnia**: Johnson alleges severe insomnia. See Dkt No. 13 at 7 ("I suffer from insomnia. I have trouble sleeping at night. There are nights I don't get any sleep at all. I walk the floors all night."). Johnson also wrote in a 2009 function report that she takes two naps totaling an hour and a half on a typical day, but that she tosses and turns all night and gets about four hours of sleep. R. 34, 167. The evidence of Johnson's insomnia from medical sources appears only in a psychological evaluation in which it was described as a symptom of depression. R. 471 ("The patient is describing many classic symptoms of depression including decreased sleep and appetite. . ."). Nevertheless, she alleges that it has been long-standing issue.

- **Asthma**: The severity of Johnson's asthma is in dispute. She alleges that she suffers from asthma and that this asthma causes her to have "trouble breathing

10

many days." Dkt No. 13 at 5. The ALJ found that Johnson's asthma was a severe impairment, but that she retained the residual functional capacity to perform medium work if she could avoid "concentrated exposure to temperature extremes, dusts, fumes, odors, gases, or poor ventilation." R. 19. The ALJ also noted many instances in the record where indications of asthma were absent. R. 20.

- **Back pain/Scoliosis**: The ALJ found that Johnson's scoliosis was a severe impairment. Johnson does not distinguish her scoliosis from back pain, and both primarily appear in the record in connection with two car accidents in which she was involved. R. 407–16 (scoliosis first diagnosed after a 2007 motor vehicle accident), 397–406 (Johnson complained of back pain months after the 2007 accident), 587–88 (tests performed after 2009 motor vehicle accident revealed that the scoliosis persisted). After the 2009 accident, Johnson was referred to a chiropractor, whose final report noted that her scoliosis—combined with her inconsistent participation in a home exercise program and lack of exercise that led to gaining excess weight—complicated the complete resolution of Johnson's back pain. R. 579. Several months after the 2009 accident, a medical source found "no scoliosis." R. 610.

These medical claims will be considered in determining whether substantial evidence supports the ALJ's decision to find Johnson not disabled.

## **ANALYSIS**

On appeal, Johnson, acting *pro se*, does not make any specific argument as to why the ALJ erred in finding her not disabled. Johnson did file a brief detailing her medical conditions, which the court liberally construes to argue that the ALJ's decision is not supported by

substantial evidence. For the reasons that follow, I conclude that there is substantial evidence in the record supports the ALJ's conclusion that Johnson failed to meet her burden of demonstrating that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

First, regarding Johnson's specific alleged impairments, the record supports the ALJ's finding that Johnson's asthma is not as serious as alleged. On numerous occasions, treating sources found that Johnson's lungs were clear to auscultation, see R. 333, 336, 341, 342, 344, 345, 352, 571, 610, 742; she did not have labored breathing, R. 333, 342, 352, 610, 724; tests such as x-rays or CT scans failed to find indicia of asthma, R. 489, 571, 670; and medical sources determined that Johnson had no active pulmonary disease. R. 489, 573, 670. The ALJ carefully considered whether Johnson's asthma qualified as a listed impairment under section 3.03 for a respiratory system. The ALJ correctly determined that Johnson did not meet the criteria for this listing, but nevertheless, limited her work activities to avoid certain environmental conditions which could aggravate her asthma. Having reviewed the record, I find that substantial evidence supports these conclusions.

There is also substantial evidence to support the ALJ's conclusion that Johnson's scoliosis is not disabling. As previously noted, while Johnson has been diagnosed with scoliosis, the majority of her complaints about back pain coincided with two motor vehicle accidents in which she was involved. See R. 407–16 (2007 accident), 397-406 (same), 587–88 (2009 accident). Despite Johnson's inconsistency with home exercises and her lack of exercise and weight gain, in November 2009, she reported a 70% improvement in her pain after physical therapy and "was able to return to her daily activities and work responsibilities." R. 578.

Additionally, less than eight months after the 2009 accident, Winifred Agard, M.D., found Johnson to have "no scoliosis." R. 610. Again, the ALJ carefully analyzed the medical records to determine that Johnson's scoliosis did not satisfy the criteria for any listed impairment. Further, the opinion evidence in the record, including the opinions of the state agency doctors, found Johnson capable of performing medium work. Substantial evidence supports these conclusions.

Johnson has complained of depression, which the ALJ found to be a non-severe impairment, and substantial evidence supports this conclusion. Two mental health professionals have diagnosed Johnson with depression. R. 469–72, 621–24. In spite of this diagnosis, Johnson was not taking any anti-depressant medication at the time of the administrative hearing and it had been about five months since she sought counseling for her depression. R. 33.

On August 9, 2007, Lisa Riddlebarger, LPC, performed a mental health examination of Johnson and found that she portrayed "many classic symptoms of depression, including decreased sleep and appetite, decreased energy and interest, impaired memory and concentration, and crying for no reason." R. 471. Johnson denied, however, suicidal or homicidal ideation. R. 471. Dr. Riddlebarger diagnosed Johnson with depression, but assessed her to be at "low risk" and recommended she take Prozac, an antidepressant. R. 471. On January 31, 2010, state agency consultative physician Loretta Braxton, Ph.D, also diagnosed Jackson with depression, but found that "her mental health condition would not interfere with her ability to perform simple, routine, repetitive tasks or maintain concentration, persistence, and pace." R. 624. Johnson has not submitted or cited any other evidence to show that her depression keeps her from performing any kind of substantial gainful activity.

Although Johnson has been diagnosed with depression, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d

13

1163, 1166 (4th Cir. 1986) (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530). There is no indication that antidepressants were ineffective in treating Johnson's depression. In fact, Johnson testified at the hearing before the ALJ that she was not currently taking any medication for her depression and was not under the active treatment of mental health professional. Moreover, all the evidence indicates that while Johnson suffers from a serious impairment, the limitations from that impairment are merely moderate. There is therefore substantial evidence to support the ALJ's conclusion that Johnson's depression was not "severe" for purposes of the Act.

The ALJ found that Johnson's other alleged impairments could be expected to cause some of her symptoms, but that she was not credible concerning the intensity, persistence, and limiting effects of her symptoms inasmuch as her reported symptoms were inconsistent with her RFC. In support of this conclusion, the ALJ noted that even accepting all of her alleged ailments as legitimate, no medical source has provided a more stringent limitation of the work Johnson could perform than the RFC he propounded.[2] R. 19. Both state agency physicians who examined Johnson's medical records endorsed Johnson's ability to perform medium work, R. 206-07, 265-67, as did state agency consultative physician Dr. Braxton. R. 621. These medical sources are the only sources to indicate objectively Johnson's functional capacity and they are all in accord that Johnson can perform to the level of the ALJ's RFC. There is no other record evidence from a treating or non-treating physician that prescribes limitations greater than those set forth by the ALJ.

As the ALJ further noted, Johnson's application for benefits is complicated by the fact that she worked for nearly three years during the time in which she alleges she was completely

---

[2] The ALJ found that Johnson retained the RFC to perform medium work, "except the claimant must avoid concentrated exposure to temperature extremes, dusts, fumes, odors, gases, and poor ventilation."

14

disabled. Johnson's alleged onset date is November 1, 2004. R. 16. Yet Johnson's earnings statements reveal that she earned $8,165.54 in 2005; $10,221.25 in 2006; $7,678.48 in 2007; and $2,798.40 in 2008. R. 132. If a claimant engages in substantial gainful activity after the alleged onset date, the regulations dictate a finding of not disabled under step one of the analysis. 20 C.F.R. §§ 404.1571, 416.971. Concerning this work activity, the ALJ gave Johnson the maximum benefit of the doubt at step one, finding that Johnson had not engaged in the substantial gainful activity that would terminate her claim. R. 21. He did, however, consider this work activity as undermining the credibility of Johnson's assertion that she could perform no work after November 1, 2004. R. 21. This work during the period of alleged disability, performed at the medium level of exertion, certainly supports the ALJ's RFC, which found that Johnson was capable of work at the medium level of exertion, with some moderate restrictions. R. 19. This reduction in credibility is especially relevant to Johnson's claim here, because the record evidence does not completely substantiate her litany of alleged ailments and her credibility is vitally important to her claim for benefits. Consequently, for the reasons set forth above, the court concludes that the ALJ's decision is supported by substantial evidence.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Johnson is totally free from any pain or distress. Indeed, Ms. Johnson's impairments require serious attention. There is simply substantial evidence in the record that Johnson failed to carry her burden of proving total disability from all forms of substantial gainful employment. It appears that the ALJ

properly considered all of the objective and subjective evidence in adjudicating Johnson's claim for benefits and in determining that her physical and mental impairments would not prevent her from performing all available work. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**, and Johnson's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

    Enter: August 27, 2013

    /s/ Robert S. Ballou

    Robert S. Ballou
    United States Magistrate Judge